[Cite as *State v. Price*, 2013-Ohio-3912.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99058**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# CHRISTIAN PRICE

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-558932

**BEFORE:** Celebrezze, P.J., Kilbane, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** September 12, 2013

**ATTORNEY FOR APPELLANT**

Jonathan N. Garver
4403 St. Clair Avenue
The Brownhoist Building
Cleveland, Ohio   44103


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Callista R. Plemel
        Daniel T. Van
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Appellant, Christian Price, appeals his conviction for kidnapping with sexual motivation and sexually violent predator specifications. He argues that his conviction is against the manifest weight of the evidence, his trial counsel was ineffective, and the trial court made several procedural errors that require reversal. After a thorough review of the record and law, we affirm appellant's kidnapping conviction with sexual motivation and sexually violent predator specifications.

## I. Factual and Procedural History

{¶2} Appellant, age 27, was accused of raping K.L., age 18. He was tried by a jury on one count of rape in violation of R.C. 2907.02(A)(2) and two counts of kidnapping in violation of R.C. 2905.01(A)(3) and 2905.01(A)(4), also including sexual motivation specifications. All three counts also included sexually violent predator specifications, which were tried to the bench.

{¶3} At trial, K.L. testified she worked at McDonald's at the drive-through window. She testified that one day in December 2011, "a carful of guys" came through the drive-through window and a passenger in the car asked her for her phone number. She gave him her number "figuring [they] could just be friends." He told her his name was Christian.

{¶4} A few days later, on December 16, she received a text message at 9:20 p.m. from Christian: "How do u spell ur name," and they began to exchange text messages.

He talked about taking her out to dinner and asked her about her zodiac sign. The texts continued over the course of several days, leading to a long, late-night telephone conversation on December 26.

{¶5} On December 27, the day of the incident, at around 10:30 a.m., appellant sent K.L. a text message inviting her to stop by his house before her shift started at McDonald's. K.L. testified she stopped at his house before heading to McDonald's to start her 3:00 p.m. shift. Her 17-year-old half-sister, C.J., drove with her and waited in the car while she went into his house at around 2:50 p.m. K.L. testified she just wanted to say "hi" and then go to work. When she got to the house, the door was open and appellant yelled for her to come up the stairs, where he was located in his bedroom. She went upstairs and went to the room he was in. She testified that appellant was not the person with whom she thought she had been communicating, and she froze. He said "hi." She testified:

> I was still standing there, and I just said, hi. I didn't want to be rude. And he asked me to come in. I'm like, *no*, I'm okay, I really got to go. And then that's when he got up and he came towards the door and that's when he grabbed me.
>
> * * *
>
> [He] grabbed my arm and that's when he put me on the bed. And I'm like, *No*, I don't want this and all of this stuff. And he just like, be quiet, it's okay, and he have all his body weight on me, and I couldn't move. I was froze[n].

(Emphasis added.)

{¶6} She testified that she told him to *stop* because that was *not* what she went there for, and he told her to be quiet. He penetrated her with his penis, and his body

weight was holding her to the mattress and she could *not* move. The penetration lasted for two to three minutes while she was telling him *no*. He then ran out of the room and she jumped up. She further testified that before she left the room, he grabbed her and whispered in her ear, "you're mine forever." She pulled away from him and immediately ran down the stairs to her car. She did not say anything to her sister and drove to her job at McDonald's. She did not tell anyone at McDonald's about the incident either.

{¶7} Several text messages were exchanged following the incident beginning at 3:01 p.m. They consist of appellant asking K.L. about their sexual experience and K.L. indicating that she liked it, but that she did not want further contact with appellant.

{¶8} Regarding the text messages exchanged on December 27 after 3:00 p.m., K.L. testified that it was her sister who sent those messages. She stated she gave her sister, C.J., the phone so she could listen to music while she waited in the seating area of McDonald's for K.L. to finish her shift. C.J. testified she had the phone the entire time K.L. was working because C.J. was listening to music, but she did not remember receiving texts from appellant or replying to those texts, other than a response at 6:00 to a text sent by appellant where C.J. informed him that she was C.J. and she had her sister's phone while K.L. was at work. K.L. insisted that her sister sent these messages.

{¶9} K.L. testified that she worked from 3:00 p.m. to 10:00 p.m. that day, and she denied sending any texts from her phone during that period. K.L. told her sister what happened after her shift. She also related the incident to her friend G.B. and asked for her advice. K.L.'s mother eventually found out about the incident when she saw K.L.'s

text messages to G.B. Her mother took K.L. to a doctor to be examined for sexually transmitted diseases. She then filed a police report.

{¶10} Detective Novitski of the Euclid Police Department testified that three months after the rape charge was brought, he retrieved the text messages from appellant's cell phone provider. Because the text messages exchanged after 3:00 p.m. appeared to him to be inconsistent with rape, he asked K.L. to return to the police station, but did not inform her of his concerns or that he had a transcript of the texts. When shown the text messages, K.L. told Det. Novitski that her sister had her phone after 3:00 p.m., and her sister would have sent all the text messages, including the response, "Yea * * * but I cant do it no more," sent at 3:07 p.m. in response to appellant's text sent immediately after the incident at 3:01 p.m. that asked, "U like," as well as the message from her phone that reads, "You are too grown for me." Det. Novitski immediately called K.L.'s sister C.J. after he walked K.L. to the door of the police station, after being with her the entire time she was at the police station, and C.J. stated she must have sent the messages because she had the phone for the duration of K.L.'s shift.

{¶11} Det. Novitski testified that C.J. told him she talked with her sister telling her that she was getting messages, and K.L. told her to "just answer him and get rid of him."

{¶12} At trial, C.J. testified that she went with her sister to her job at McDonald's on December 27, 2011. She waited in the car for her sister after she went inside appellant's house. She testified that K.L. was inside for about five or six minutes. When K.L. came out of the house, she got back in the car, and appellant followed her out

and was saying something to her. K.L. seemed to be "in a hurry," and "looked disheveled like she was thinking about something." K.L. did not say anything to her about what had happened inside.

{¶13} At the close of the trial, the jury began deliberating. After one day, the jury foreperson informed the trial court that the jurors were split on the rape count without specifically stating they were deadlocked. The court, after confirming with the foreperson that the jury was indeed unable to reach a unanimous verdict, gave the *Howard* charge to the jury.[1] The jury had also asked the trial court whether it could deliberate on Count 2 (kidnapping) if it could not reach a verdict on the rape count, to which the trial court replied affirmatively. The jury continued to deliberate after the *Howard* charge. At one point, the foreperson again informed the trial court of the split status of their votes — this time without specifying which count. At this point, the defense sought a mistrial, which the trial court denied.

{¶14} Thereafter, one of the jurors informed the court in a written note that "it is apparent to me that we have a high potential to not resolve the deliberations today" and that he had an important business trip the following day. He asked the court what his options were. In response, the court instructed the jury: "Each jury member is a member of a deliberating jury. Each member is expected to stay with deliberations until the end.

---

[1] In *State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), the Supreme Court of Ohio set forth the proper instruction with which the trial court must charge a jury that has declared itself deadlocked.

The court has no way of knowing when the jury will conclude its work." After this instruction, the jury reached a verdict within the same afternoon session.

{¶15} The jury found appellant not guilty on the rape count and the count of kidnapping for the purpose of terrorizing the victim (R.C. 2905.01(A)(3)). The jury, however, found him guilty of the count of kidnapping for the purpose of engaging in sexual activity (R.C. 2905.01(A)(4)) with a sexual motivation specification.

{¶16} The trial court subsequently held a hearing regarding the sexually violent predator specification accompanying the kidnapping offense. The court found appellant to be guilty of the specification and preceded to sentence him to a prison term of ten years to life, imposed consecutively to the six-year prison term in a previous case, Cuyahoga C.P. No. CR-549930 (May 14, 2012).

{¶17} On appeal, appellant raises seven assignments of error and one supplemental assignment of error:

> I. Appellant's conviction for kidnapping with a sexual motivation specification is against the manifest weight of the evidence.
>
> II. The trial court abused its discretion and committed plain error by failing to give an instruction to the jury regarding the affirmative defense of "safe release" where the undisputed evidence established that the alleged victim had been released in a safe place unharmed.
>
> III. The evidence was insufficient to support a conviction for a first degree felony under [R.C.] 2905.01(A)(4) by virtue of [R.C.] 2905.01(C)(1) because the undisputed evidence established that the alleged victim had been released in a safe place unharmed.
>
> IV. Appellant was denied effective assistance of counsel. Sixth and Fourteenth Amendments to the United States Constitution; Article I, Section 10, Ohio Constitution.

V. The trial court committed plain error by instructing the jury that "proof of motive is not required" when both the rape and kidnapping charges contained sexual motivation specifications.

VI. The trial court's premature use of a *Howard* charge, followed by an instruction that essentially ignor[ed] the plea of a deliberating juror, who had alerted the court to an important upcoming business trip, to be excused from further participation in the deliberations had a coercive effect on the jury and resulted in a denial of due process of law.

VII. Appellant's conviction on the sexual predator specification under Count II of the indictment is against the manifest weight of the evidence.

VIII. The subsequent reversal of appellant's prior convictions for rape, kidnapping, and telephone harassment, which were used to secure a conviction for the sexually violent predator specification, requires the reversal of appellant's conviction on the sexually violent predator specification.

## II. Law and Analysis

## A. Manifest Weight

{¶18} Under appellant's first assignment of error, he contends his conviction for kidnapping with a sexual motivation specification is not supported by the manifest weight of the evidence.

{¶19} A manifest weight challenge questions whether the state met its burden of persuasion at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. This court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d

380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

> "Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'"

(Citations omitted.) *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio- 2999, ¶ 26, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.

**{¶20}** The kidnapping offense of which appellant was found guilty is defined in R.C. 2905.01(A)(4) as follows: "No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in [R.C.] 2907.01 * * * with the victim against the victim's will[.]"

**{¶21}** R.C. 2907.01 defines sexual activity as sexual conduct or sexual contact. These are further defined respectively as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus * * *; and * * * the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another * * *" and "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

**{¶22}** Here, the evidence adduced at trial weighs in favor of conviction. K.L. testified that she went to appellant's house just to say hello because it was only a few minutes before her shift started at McDonald's. Once she arrived at the house, she was directed upstairs by appellant to his bedroom. She testified that she froze in the doorway because she did not recognize him as the person she thought she had been talking to. She further testified that she was grabbed by the arms, moved to the bed, and pinned under appellant.

**{¶23}** Appellant points to the text messages that were exchanged after this incident as evidence of his innocence. A transcript of these messages was introduced at trial (included here unedited in original form):

| | | |
|---|---|---|
| (3:01 p.m.) | Appellant: | U like |
| (3:07 p.m.) | K.L.: | Yea * * * but I cant do it no more |
| (Time unknown) | Appellant: | Y not |
| (3:14 p.m.) | Appellant: | Wats wrong |
| (3:15 p.m.) | Appellant: | If u dont wanta do it again. Thats mean u didn't like it |
| (3:22 p.m.) | Appellant: | Y do u feel dat way |
| (3:26 p.m.) | K.L.: | No its not that * * * you just too grown for me |
| (3:28 p.m.) | Appellant: | R u mad at me |
| (3:30 p.m.) | Appellant: | Dam. So u just wanted 2 c wat my dick game is like. Wow |

(3:31 p.m.)          Appellant:    Look.  I like u.  Age should not matter. I really wanta b there 4 u.   And I dont want dat 2 b da only time that we do it.  Do u really want make dat da only time u got dis dick.

(3:31 p.m.)          Appellant:    U felt so so so good.  U got some good ass pussy.   I love it.

(3:40 p.m.)          K.L.:    Thanks but im honestly not ready for you

(3:50 p.m.)          Appellant:    Y u think u not ready 4 me.  U think I will turn u out.

(3:51 p.m.)          Appellant:    Be honest. Was da dick wat u expected it 2 b

(3:51 p.m.)          Appellant:    And da head

(3:55 p.m.)          K.L.:    Yea but I cant di it

(4:07 p.m.)          Appellant:    Wat time r u takn ur break b.   I wanta talk

(4:08 p.m.)          Appellant:    Tell me wat was u thinkn when I was giving u head.   Wat was ur thoughts.

(4:17 p.m.)          K.L.:    Prolly and honestly I was thinking I shouldnt have let you but whatever you just too grown for me and ima stick to my young nighas

(4:23 p.m.)          Appellant:    That hurt. Thanks

(4:43 p.m.)          Appellant:    Dat really hurt me. Cause I really liked u. I though we had an understanding that u wasnt lookn 4 a man.  I dont c how I'm 2 much 4 u.   I just wanta be there 4 u.   Thanks 4 hurtn me tho

(4:57 p.m.)          K.L.:    Im sorry

(5:08 p.m.)          Appellant:    I just feel stupid

(5:08 p.m.)          Appellant:    I didnt think dis was 2 much

(5:10 p.m.)          Appellant:    I would think its cool dat im older cause now u wouldve had a place 2 cum get away and chill at.   Walk around here

how u wanted 2. worrying about some 1 parents cumn home.  Its not like I was askn u 4 anything.   I just wanted 2 b there 4 u.

(5:11 p.m.)          Appellant:   Can you do me a favor and at least cum say goodbye on ur break.   At 6

(5:16 p.m.)          Appellant:   Hello

(5:19 p.m.)          Appellant:   Please

(5:19 p.m.)          Appellant:   Please

(5:26 p.m.)          Appellant:   Yes no tell me something

* * *

(5:39 p.m.)          K.L.:  My sister got my phone but I can't

(5:40 p.m.)          Appellant:   Y not

(5:43 p.m.)          Appellant:   Y not.   Y r u really dogging me like that

(5:52 p.m.)          K.L.:         I'm not and I cant bring you know food

(5:59 p.m.)          Appellant:   Can we talk at least.   Im really over here salty and hurtn

(6:04 p.m.)          K.L.:         She dont got her phone I do * * * She lettin me use it * * *

{¶24} At trial, confronted with these messages, K.L. said her sister C.J. had the phone the entire time K.L. was at work.  K.L. testified C.J. must have sent those messages.  C.J. testified that she must have sent those messages because she had K.L.'s phone while K.L. was working.  However, C.J. testified she did not remember receiving texts from appellant except for the one that came at 5:59 p.m., and she did not remember

sending any texts to appellant except the one she sent at 6:04 p.m. indicating C.J. had K.L.'s phone.

{¶25} If we believe K.L., that C.J. had her phone the entirety of her shift, then the messages do nothing to exculpate appellant. However, even if we believe appellant's contentions that the message content clearly indicates that K.L. sent the text messages prior to 6:00 p.m., the messages do not demonstrate a manifest miscarriage of justice.

{¶26} The jury was confronted with this argument, and trial counsel did a good job of highlighting the nature of the messages. However, in the messages, K.L. can be seen to immediately try to end any relationship with appellant and any further communication. This is consistent with what the jury found, which was that something happened in appellant's bedroom of a non-consensual nature. The jury found that insufficient evidence of rape existed based on this record, but that appellant lured K.L. into his bedroom to engage in sexual activity. Once there, he forcibly moved her to the bed in order to engage in sexual activity.

{¶27} The verdicts in this case appear at first glance to be inconsistent because appellant was acquitted of rape, but was found guilty of kidnapping with a sexual motivation. However, "in criminal cases, consistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts, and acquitted on others, and the conviction will generally be upheld, irrespective of its rational incompatibility with the acquittal." *State v. Sailor*, 8th Dist. Cuyahoga No.

83552, 2004-Ohio-5207, ¶ 88, citing *State v. Woodson*, 24 Ohio App.3d 143, 493 N.E.2d 1018 (10th Dist.1985).

{¶28} The kidnapping statute "'punishes certain removal or restraint done with a certain purpose and the eventual success or failure of the goal is irrelevant.' Accordingly, a finding of not guilty on the rape charge 'is not in any sense a finding that there was no intent or purpose to commit those crimes at the time of the abduction.'" (Citations omitted.) *State v. Smith*, 9th Dist. Summit Nos. 23468 and 23464, 2007-Ohio-5524, ¶ 41, quoting *State v. Matthieu*, 3d Dist. Mercer Nos. 10-02-04 and 10-02-05, 2003-Ohio-3430, ¶ 17.

### B. "Safe Place" Jury Instruction and Sufficient Evidence of Kidnapping

{¶29} In his second assignment of error, appellant claims the trial court should have, sua sponte, given a jury instruction stating that where the victim of a kidnapping is left in a safe place unharmed, the jury may consider that fact and reduce the level of felony offense.

{¶30} Generally "[a]n appellate court is to review a trial court's decision regarding a jury instruction to determine whether the trial court abused its discretion." *State v. Mitchell*, 11th Dist. Lake No. 2001-L-042, 2003-Ohio-190, ¶ 10, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). But here, appellant did not request such an instruction, and therefore has waived all but plain error. *State v. Hall*, 8th Dist. Cuyahoga No. 98615, 2013-Ohio-2900, ¶ 20. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to

the attention of the court." The Ohio Supreme Court has instructed that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶31} According to R.C. 2905.01(C)(1), if the victim of a kidnapping is released in a safe place unharmed, the level of felony is reduced to one of the second degree. However, "[w]hether a kidnapper releases his victim unharmed in a safe place 'is not an element of the offense; rather, the accused must plead and prove it in the fashion of an affirmative defense.'" *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169, ¶ 55, quoting *State v. Sanders*, 92 Ohio St.3d 245, 265, 750 N.E.2d 90 (2001).

{¶32} This court has found plain error where the "safe place" instruction was not given when the evidence adduced at trial unequivocally showed that the victims of the kidnapping were, indeed, released unharmed. *State v. Carroll*, 8th Dist. Cuyahoga No. 93938, 2010-Ohio-6013, ¶ 16. There is no such unequivocal evidence in the present case.

{¶33} Here, K.L. testified she was able to escape appellant's bedroom. She pulled away from appellant's grasp and ran down the stairs and out of the house. C.J. testified that K.L. left appellant's house quickly while being followed by appellant. Escaping from the clutches of a kidnapper is not the same as being released. *State v. Bowman*, 8th Dist. Cuyahoga No. 97165, 2012-Ohio-1355, ¶ 20. K.L. also testified that she was raped during this time. Appellant's reliance on the jury's verdict finding him not guilty of rape

asks this court to engage in hindsight review of the trial court's judgment. At the time the trial court gave the jury instructions, appellant had not established the elements of what amounts to an affirmative defense to necessitate the trial court instructing the jury as appellant now complains. Therefore, the trial court did not commit plain error when it did not give such a jury instruction.

{¶34} Appellant also claims that because the victim was left in a safe place unharmed, there is insufficient evidence to support a first-degree felony kidnapping. Appellant's sufficiency argument must necessarily rely on a lack of evidence of harm adduced at trial. The evidence produced by the state consisted of K.L.'s testimony that she was raped by appellant. While the credibility of that testimony may be debated and may have been rejected by the jury, the evidence adduced at trial was that K.L. was raped. For sufficiency arguments, this court does not examine the credibility of the state's evidence, but "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, at ¶ 16. Therefore, construing the evidence in favor of the state, there is sufficient evidence to support a first-degree felony kidnapping.

### C. Ineffective Assistance of Counsel

{¶35} In his fourth assignment of error, appellant claims his trial counsel was ineffective for failing to request a "safe place" instruction and for failing to address the kidnapping counts in his closing argument.

**{¶36}** To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. A defendant must show that counsel acted unreasonably and that, but for counsel's errors, there exists a reasonable probability that the result of the proceeding would have been different. *Strickland* at 696; *Bradley* at paragraph three of the syllabus. In making this determination, the reviewing court must presume that counsel's conduct was competent. *Id*.

**{¶37}** For the same reasons articulated above discussing appellant's second assignment of error, appellant's trial counsel was not ineffective for failing to request a "safe place" instruction. There was no evidence adduced that appellant released K.L. unharmed. There is evidence that she fled his house. She quickly left his bedroom and house while he followed after her. There is little chance that such a requested instruction would have been granted, and therefore little chance that a failure to put forth such a request constituted ineffective assistance of counsel.

**{¶38}** Regarding closing arguments, appellant's counsel argued forcefully against conviction for rape and the charges in general terms, but did not mention kidnapping. However, closing arguments fall under the ambit of trial tactics, and "[d]ebatable trial tactics do not establish ineffective assistance of counsel." *State v. Weems*, 8th Dist. Cuyahoga No. 98397, 2013-Ohio-1343, ¶ 16, citing *State v. Conway*, 109 Ohio St.3d 412,

2006-Ohio-2815, 848 N.E.2d 810. Further, closing arguments are not evidence. They are an opportunity to comment on the evidence and lay out a favorable version of events.

{¶39} The Third District has repeatedly held that "'the manner and content of trial counsel's closing arguments are a matter of trial strategy and do not constitute ineffective assistance of counsel.'" *State v. Pellegrini*, 3d Dist. Allen No. 1-12-30, 2013-Ohio-141, ¶ 47, quoting *State v. Turks*, 3d Dist. Allen No. 1-08-44, 2009-Ohio-1837, ¶ 42, citing *State v. Williams*, 3d Dist. Marion No. 9-07-61, 2008-Ohio-3887, ¶ 70. Further, even a complete waiver of closing arguments, without a showing of some sort of prejudice, is not ineffective assistance of counsel. *State v. Ross*, 8th Dist. Cuyahoga No. 92289, 2009-Ohio-5366, ¶ 27.

{¶40} Examining trial counsel's statements made during closing arguments, this court cannot say that it fell below an objective standard of reasonable performance that deprived appellant of effective assistance of counsel. There is little, if any, probability that a different argument would have resulted in a different outcome in this case. Appellant's fourth assignment of error is overruled.

### D. Other Jury Instructions

### i. "Proof of Motive" Jury Instruction

{¶41} Appellant argues the trial court committed plain error when it instructed the jury that proof of motive is not required because, appellant asserts, where a sexual motivation specification is included in the case, proof of motive must be shown by the state.

{¶42} When a jury instruction relieves the state of its burden of proving an element of an offense, it violates a defendant's due process rights. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 97. However, in order for such an error to rise to the level of plain error, it must be prejudicial to appellant in that the outcome of the trial clearly would have been different. *State v. Steele*, Slip Opinion No. 2013-Ohio-2470, ¶ 31 (June 18, 2013). As stated earlier, plain error must be recognized only "under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. This court "must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions." *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶ 17.

{¶43} R.C. 2941.147 indicates a sexual motivation specification requires the state to show that the underlying offense was committed with "a purpose to gratify the sexual needs or desires of the offender." R.C. 2971.01(J). Appellant claims the trial court's instruction that "[p]roof of motive is not required" impermissibly relieves the state of its burden to prove that the kidnapping was committed with a sexual motivation.

{¶44} But here, the court's instruction on motive goes beyond the small portion cited by appellant. The jury instruction regarding the sexual motivation specification stated, "'Sexual Motivation' means a purpose to gratify the sexual needs or desires of the defendant." Jury instructions on motive generally indicate that "[p]roof of motive is not required. The presence or absence of motive is one of the circumstances bearing upon

purpose or knowledge. Where an act is a crime, a 'good' motive or purpose is not a defense." The court orally instructed the jury as follows:

> Proof of motive is not required. Now, having said that you heard about sexual motivation, but we're talking about the proof of motive in the conduct that you find occurred here isn't required, but presence and absence of motive is a circumstance that bears on purpose or knowledge. Where an act is a crime with motive purpose is not a defense.

The court made it clear that it was distinguishing the sexual motivation specification from the general "proof of motive" instruction.

**{¶45}** The court's instruction did not impermissibly relieve the state of its burden to show that appellant committed the kidnapping with a sexual motivation. Even if it did, there is no argument or evidence that such an error would have changed the outcome at trial. Therefore, appellant's fifth assignment of error is overruled.

### ii. *Howard* **Charge**

**{¶46}** Next, appellant argues in his sixth assignment of error that the trial court prematurely issued a *Howard* charge to the jury. He also argues that the court ignored a juror who wanted to be excused due to an important business trip.

**{¶47}** Where it appears to a trial court that a jury is incapable of reaching a consensus, the court, in its discretion, may make a last-ditch effort to prod the jury into reaching a unanimous verdict so long as its instructions are balanced, neutral, and not coercive. *Howard*, 42 Ohio St.3d 18, 24, 537 N.E.2d 188. Rejecting other alternatives, the Ohio Supreme Court dictated the instruction to be given:

> The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected.

Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors.

*Id.* at paragraph two of the syllabus.

**{¶48}** "Whether a jury is irreconcilably deadlocked is a '"necessarily discretionary determination"' for the trial court to make." *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 127, quoting *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 37, quoting *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), fn. 28.

**{¶49}** Here, after deliberating for a day, the jury sent a communication to the trial court indicating they could not reach a verdict. The jury, contrary to the trial court's instructions, indicated they were "7 jury members for 'guilty' and 5 jury members for 'not guilty'[;] where do we go from here?" The trial court discussed this question with counsel for appellant and the state. The judge thought the jury was indicating they were

deadlocked and was inclined to give a *Howard* charge, but was hesitant because the jury did not explicitly state this. The judge brought the jury back into court and asked if the question meant the jury was deadlocked and could not reach a verdict. The jury indicated it was deadlocked. The court then gave the *Howard* charge.

{¶50} Following the *Howard* charge, the jury deliberated for another full day and then sent two additional notes to the court stating that it was again deadlocked, with nine in favor of conviction for rape and three finding appellant not guilty of rape. Juror No. 13 indicated that he thought there was a high probability that the jury would not reach a verdict and that he had an important business trip the following day. He asked the court what his options were. The court issued the following instruction over appellant's objection: "Each jury member is a member of a deliberating jury. Each member is expected to stay with the deliberations until the end. The court has no way of knowing when the jury will conclude its work." The jury continued to deliberate, and on the evening of the second day, they reached a verdict.

{¶51} Appellant asserts that the *Howard* charge and the court's response to juror 13's question was impermissibly coercive. However, there is no error with the *Howard* charge. After a full day of deliberations, the jury indicated it was deadlocked, and the court instructed it according to the language set forth by the Ohio Supreme Court. The trial court did not abuse its discretion in so doing. *State v. Rhines*, 2d Dist. Montgomery No. 24417, 2012-Ohio-3393 (charge issued after 11 hours of deliberations); *State v. McDowell*, 10th Dist. Franklin No. 10AP-509, 2011-Ohio-6815 (charge given after jury

deliberated one and one-half days); *State v. Shepard*, 10th Dist. Franklin No. 07AP-223, 2007-Ohio-5405, ¶ 11 (citing cases where the charge has been upheld after only a few hours of deliberations).

**{¶52}** The court's response to juror No. 13 was also not an abuse of discretion. The requirement that a juror remain as part of the deliberating body through the end of trial is a necessary requirement to our system of trials. Further, juror No. 13 disclosed the business trip during voir dire and said that, should trial continue to the date of the trip, it could be moved. This juror was not impermissibly placed under compulsion to arrive at a verdict as appellant argues. The court's instructions were impartial, measured, and, most important, not coercive. Appellant's sixth assignment of error is overruled.

### E. Sexual Predator Specification

**{¶53}** In his seventh assignment of error and supplemental eighth assignment of error, appellant claims that his conviction on the sexual predator specification is against the manifest weight of the evidence, and the vacation of his prior convictions require reversal of the specification.

**{¶54}** The key determination necessary to find that a person is a sexually violent predator is whether the person is likely to engage in further sexually violent offenses in the future. R.C. 2971.01(H)(1). The evidence a court may examine includes:

> (a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.

(b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.

(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.

(d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.

(e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.

(f) Any other relevant evidence.

R.C. 2971.01(H)(2); *see also* R.C. 2941.148(B).

{¶55} At the time the trial court made its decision about the sexual predator specification, it had before it appellant's prior conviction for rape, kidnapping, and telecommunications harassment where the offense had occurred only months before the date of the incident in the present case. *See State v. Price*, 8th Dist. Cuyahoga No. 98410, 2013-Ohio-1542 ("*Price I*"). The court also stated it considered the evidence at trial and determined that it was sufficient to find a sexually violent offense was perpetrated against K.L. and that appellant had been convicted of kidnapping with a sexual motivation specification. This, the court reasoned, satisfied R.C. 2971.01(H)(2)(a). Based on this evidence and the record, the court found that appellant was likely to commit sexually violent crimes in the future. We cannot say that the trial court lost its way in finding appellant guilty of the sexually violent predator specification based on this evidence.

{¶56} Appellant argues the evidence relied on by the trial court to find him guilty of the specification is now in doubt, and therefore the specification must be vacated. This argument is premature because appellant will be retried on those charges, and the convictions may be reaffirmed.

{¶57} Appellant's convictions in *Price I* were vacated and remanded for a new trial based on this court's finding that appellant's trial was tainted by statements made by a police officer that impermissibly impinged on appellant's right to remain silent. *Id*. at ¶ 31-32. R.C. 2971.01(H)(2)(a) specifically indicates a vacated conviction may not be used as evidence of a prior sexual offense. Without this prior conviction, the evidence in the record may not be sufficient to sustain the specification, and it may be against the manifest weight of the evidence.

{¶58} However, the vacation of this conviction is, essentially, outside of the record before this court. Further, the argument is premature given that appellant's conviction may yet stand as a result of a retrial. This court could vacate the specification and remand for a new trial where the trial court could hold the case pending the outcome of the retrial resulting from *Price I*. However, this would likely lead to speedy trial issues. While the state statutory provisions governing speedy trial do not apply to retrials, "the federal and state constitutional provisions governing speedy trial apply, and require a reviewing court to determine whether the length of time was reasonable under the circumstances." *State v. Campbell*, 5th Dist. Stark No. 2000CA0006, 2000 Ohio App. LEXIS 4930, *4 (Oct. 23, 2000). *See also State v. Bigley*, 9th Dist. Medina No.

02CA0017-M, 2002-Ohio-4149; *State v. Evans*, 5th Dist. Fairfield No. 47-CA-84, 1985 Ohio App. LEXIS 8198 (June 21, 1985); *State v. Billups*, 10th Dist. Franklin No. 91AP-68, 1991 Ohio App. LEXIS 3918 (Aug. 15, 1991).

{¶59} It would be better to review this issue in a postconviction relief petition once the status of appellant's previous convictions are definitively addressed. This court chooses not to address this issue because it is technically outside of the record on appeal. Res judicata or principles of untimeliness should not bar further review if appellant is found not guilty of sexually oriented offenses in *Price I*.

## III. Conclusion

{¶60} Appellant's conviction for kidnapping with sexual motivation and sexually violent predator specifications is not against the manifest weight of the evidence. Further, appellant's trial counsel was not ineffective, and the court did not err in its jury instructions.

{¶61} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

MARY EILEEN KILBANE, J., CONCURS (WITH SEPARATE OPINION);
TIM McCORMACK, J., DISSENTS (WITH SEPARATE OPINION)

MARY EILEEN KILBANE, J., CONCURRING:

{¶62} I write separately to express my concurrence with the majority decision that found that the defendant's conviction was not against the manifest weight of the evidence. While certainly a reasonable juror could have found the defendant was not guilty of the kidnapping based on the record evidence, I cannot agree with the dissenting opinion that such a result was the only rational verdict. The dissent eloquently states its position, but with reliance and reference to the allied-offense analysis. However, the allied-offense analysis is not one to be conducted or resolved by the factfinder or jury. The allied-offense statute recognizes that an accused can be charged and actually convicted of multiple allied offenses but may only be sentenced to a single conviction.[2] The allied-offense statute incorporates the constitutional protections against double jeopardy and prohibits multiple punishments for allied offenses of similar import. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 7. However, a not

---

[2]R.C. 2941.25(A) provides, "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

guilty verdict as to one offense does not mean a guilty verdict on another allied offense of similar import is against the manifest weight of the evidence. I do agree that had the defendant also been convicted of rape in this case, it would be an allied offense to his kidnapping conviction. Notwithstanding, I do not agree that an acquittal of the rape charge requires an acquittal of the kidnapping charge.

{¶63} This is not the first case where an accused was acquitted of a rape charge but found guilty of kidnapping arising out of the same conduct. *State v. Cope*, 12th Dist. Butler No. CA2009-11-285, 2010-Ohio-6430, ¶ 67-70 (noting that R.C. 2905.01(A)(4) requires only that the restraint or removal occur for the purpose of nonconsensual sexual activity, not that sexual activity actually take place), citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 197; *see also State v. Matthieu*, 3d Dist. Mercer Nos. 10-02-04 and 10-02-05, 2003-Ohio-3430 (noting the kidnapping "statute punishes certain removal or restraint done with a certain purpose and the eventual success or failure of the goal is irrelevant").

{¶64} As the court in *Cope* noted, "Each count in an indictment charges a distinct offense and is independent of all other counts; a jury's decision as to one count is independent of and unaffected by the jury's finding on another count." *Id.*, citing *State v. Brown*, 12 Ohio St.3d 147, 465 N.E.2d 889 (1984), syllabus. Accordingly, the kidnapping charge does have an independent significance from the rape charge.

{¶65} Notably, the dissent assumes that the jury only found that the element of force was lacking in reaching a not guilty verdict on the rape charge. It is also possible

that the jury was not convinced beyond a reasonable doubt that any "sexual conduct"[3] really occurred. The credibility of the contents of the text messages, as with all evidence, was within the province of the jury to decide. Jurors are advised by instructions that they can believe all, part, or none of the testimony of any witness. *See, e.g.*, *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶ 120 (citing jury instruction stating that jurors may believe or disbelieve all or any part of the testimony of any witness). "Moreover, it is not for an appellate court to speculate about why a jury decided as it did." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 291, citing *State v. Lovejoy*, 79 Ohio St.3d 440, 445, 683 N.E.2d 1112 (1997). "'Courts have always resisted inquiring into a jury's thought processes * * *; through this deference the jury brings to the criminal process, in addition to the collective judgment of the community, an element of needed finality.'" *Lovejoy*, quoting *United States v. Powell*, 469 U.S. 57, 66-67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).

---

[3]R.C. 2907.01(A)-(C) set forth the following definitions:

(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

(B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

(C) "Sexual activity" means sexual conduct or sexual contact, or both.

**{¶66}** There is competent, credible evidence in the record that the defendant exerted force against the victim in an effort to engage in "sexual activity" against her will, which are the elements necessary to sustain the kidnapping conviction. If the defendant had only been charged with kidnapping and not rape, I do not believe there would be any question that competent, credible evidence supports a kidnapping conviction. To find that the kidnapping charge necessarily must fail because the jury was not convinced of the elements of rape beyond a reasonable doubt fails to afford each offense its independent significance and also requires us to speculate into the thought process of the jury. For these reasons, I cannot find that the jury clearly lost its way by finding defendant guilty of kidnapping.

TIM McCORMACK, J., DISSENTING:

**{¶67}** I respectfully dissent. Viewing the record in its entirety, weighing all evidence and all reasonable inferences, and fulfilling our designated role as the "thirteenth juror," I am unable to find the manifest weight of the evidence weighs in favor of a conviction of kidnapping. This conclusion is reached with an appreciation and a clear recognition of the constitutionally created sanctity of this and each jury verdict and an appellate court's role as it relates to the trier of fact.

**{¶68}** The determination by a jury of our peers as to what is a fair and just outcome of a trial is revered. By Ohio constitutional mandate, no jury decision can be put aside unless and until it is found, on the rare occasion, that maintaining a loyal

adherence to that jury decision will allow for and perpetuate a manifest miscarriage of justice.

{¶69} There is inherently a strong tension and a purposefully built-in discomfort to this process. That tension and discomfort was woven into our due process by our Ohio Constitution, statutes, and court precedents to ensure a rigorous appeal process. The protection provided by a jury of our peers dates to our first days as a nation and as a state. Our system of laws does not encourage reversal of jury verdicts. Equally relevant, though, is the high priority our justice system places on our courts to ascertain truth and dispense justice fairly.

{¶70} I am acutely aware of the systemic legal tension resulting from the proceedings that have taken place in this matter prior to our mandated review. Initial accusations, community police work, grand jury indictments, adversarial trial before a jury, and an additional penalty hearing conducted by the trial court all precede our review. The Ohio Constitution, however, ensures one additional legal safeguard before final determination. Our Constitution and laws provide that a person who has been convicted, either by a jury or from the bench by a trial court, may appeal that conviction to the court of appeals. When that conviction is the result of a trial by jury, the role of the court of appeals requires the appellate panel to both extend full deference to the determination of that jury, as triers of fact, but at the same time to rigorously review the assignments of error that are raised to it. It is with an understanding of this well-planned systemic legal tension that the following review is undertaken.

{¶71} The offense of rape is defined in R.C. 2907.02 (A)(2) as follows: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶72} The kidnapping offense of which Price was found guilty is defined in R.C. 2905.01(A)(4) as follows:   "No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in [R.C.] 2907.01 * * * with the victim against the victim's will[.]"   As defined, kidnapping can be committed by either asportation of the victim ("remove another from the place where the other person is found"), or by a restraint of the victim's liberty.

{¶73} During the commission of a rape, a victim is often removed, or her liberty is restrained.   Therefore, in many instances, implicit in a rape offense is kidnapping.   *See State v. Donald*, 57 Ohio St.2d 73, 75, 386 N.E.2d 1341 (1979); *State v. Powell*, 49 Ohio St.3d 255, 262, 552 N.E.2d 191 (1990).   Thus, a defendant may be charged with both rape and kidnapping for the same criminal conduct.   To avoid punishing a defendant twice for a single criminal act, the courts have been required to determine whether these offenses are committed with a single or separate animus.

{¶74} In *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), the Supreme Court of Ohio addressed the relationship between rape and kidnapping.   The court explained that kidnapping is committed with a separate animus if there is substantial "asportation" (removal), or prolonged restraint, of the victim, subjecting the victim to a

substantial increase of risk of harm, and therefore, demonstrating a significance independent of the underlying rape. However, where "the detention was brief, the movement was slight, and the victim was released immediately" following the rape, the kidnapping is not committed with a separate animus but is incidental to the underlying rape, without a legal significance apart from facilitating the rape. *Id*. at 135. In such instances, kidnapping and rape are "allied offenses" and, if found guilty of both, a defendant cannot be convicted and punished for both offenses. In *Logan*, the defendant held a knife to the victim's throat, forced her into an alley and down a flight of stairs, where he raped her at knifepoint. The court held that the defendant's detention and asportation of the victim was incidental to the rape and demonstrated a single animus, thus reversing the kidnapping conviction. *See also State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 23.

{¶75} Although this appeal does not concern whether the kidnapping and the rape offenses under the circumstances of this case are allied offenses, the allied offenses case law regarding rape and kidnapping provides guidance in analyzing whether Price's conviction of kidnapping is against the manifest weight of the evidence.

{¶76} The jury found the state failed to prove that the sexual conduct was compelled by force or threat of force, but found that the state proved that Price removed K.L. from where she was by force, threat, or deception, or restrained her liberty, in order to engage in sexual activity against her will.

{¶77} An appellate court's inherently restricted role in reviewing a manifest-weight claim is acknowledged, as the jury undoubtedly is in the best position to determine the credibility of the witnesses. However, the unique circumstances of this case — where the kidnapping is incidental to the rape charge, and where the victim's largely uncorroborated testimony appears to be contradicted by contemporaneous evidence — impose on this court a heightened obligation to sit as the "thirteenth juror" and review the evidence independently and critically. *Thompkins*, 78 Ohio St.3d at 387, 1997-Ohio-52, 678 N.E.2d 541.

{¶78} A review of the record shows that prior to the incident, K.L. and Price exchanged extensive text messages for two weeks. The records of these messages were obtained by the police. The messages often alluded to sex. For example, he asked her if she had a "freaky" side, which, according to her testimony, referred to her sexual experiences. He also asked her the oldest person she had a sexual experience with, and she answered "23." Despite the sexual overtones, K.L. continued to exchange messages with Price, well past midnight on some nights. These text messages culminated in an actual phone conversation between the two for three hours the evening before the day of the incident. He told her he was 27 during the phone conversation.

{¶79} On the day of the incident, around 10:30 a.m., Price initiated another conversation in a text message: "I knew u wasnt going 2 cum." Around 1:22 p.m. he texted, "Can u stop by 4 10 min b4 u go 2 work." She responded, "Yea I guess thats

cool." She told him she would be done with school at 2:30 p.m. but needed to take a shower before heading to her job at the McDonald's.

{¶80} According to her testimony, when she got inside the house, he yelled from upstairs for her to go up to his room. When she got to his room, she saw a man who looked older than the individual with whom she thought she was communicating. Even if she might have been mistaken as to the identity of the person she had been communicating with, there was no testimony indicating Price was aware of her mistaken belief, or that he disguised his identity at any time in any manner.

{¶81} After the incident, K.L. came out of Price's house and drove to work with her sister. Almost immediately, he texted her, at 3:01 p.m: "U like [?]" She texted back at 3:07 p.m., "Yea * * * but I cant do it no more." The exchange of text messages continued throughout the afternoon until around 6:04 p.m. He asked her again if she "didn't like it," and she replied, "its not that * * * you just too grown for me." At 3:40 p.m., she texted, "i'm honestly not ready for you." At 4:17 p.m., she texted, "* * * you just too grown for me."

{¶82} Regarding the text messages exchanged after 3:00 p.m., which appeared inconsistent with a claim of rape, K.L. testified that it was her sister C.J. who sent those messages, although K.L. also testified she did not tell her sister about the incident until after she finished her shift later in the evening. At trial, C.J. was asked about the text message sent from K.L.'s phone at 3:07 p.m. ("Yea, but I can't do it no more"). C.J. stated she did not remember sending it, nor any messages following it. She testified

those messages did not "sound like something [she] would have sent, because she would have no idea what the sender was talking about."

{¶83} The only message C.J. remembered sending was the one sent at 6:04 p.m. that said, "She dont got her phone I do * * * She lettin me use it * * *." Under cross-examination, C.J. was asked if it was possible that she did not remember any of the messages between 3:00 p.m. and 6:00 p.m. because K.L. did not give her the phone until 6:00 p.m. She first answered, "I don't remember," then she agreed it was possible.

{¶84} K.L. did not tell anyone about the incident immediately, nor did she go to the police to make a report. The incident came to light only when her mother discovered some text messages she exchanged with a friend a week later.

{¶85} The text messages become strong evidentiary guides in this narrative. Because K.L.'s testimony that the sexual conduct was not consensual is the primary evidence for the rape charge, it is critical to the state's case that K.L.'s testimony regarding a lack of consent is credible. This case would have been a classic "she-said-he-said" case, except for the text messages exchanged nearly contemporaneously with the sexual conduct and subsequently retrieved by the police. Based on the jury's acquittal of the rape charge, the jury apparently found the credibility of K.L.'s testimony significantly undermined by the text messages exchanged minutes after the sexual conduct, which were inconsistent with a claim of rape. Although K.L. testified C.J. sent those text messages, C.J.'s testimony at trial did not support that claim.

**{¶86}** Indeed, the jury found Price not guilty of rape. However, it found him guilty of kidnapping. In order to find him guilty of this offense, the jury must find that he committed kidnapping either in (1) "remov[ing] another from the place where the other person is found," by force, threat, or deception, or in (2) restraining the victim's liberty, for the purpose of "engag[ing] in sexual activity with the victim against the victim's will."

**{¶87}** In theory, Price's conduct could have satisfied the definition of kidnapping in two ways: a "removal" of K.L. by force, threat, or deception, or a restraint of K.L.'s liberty. Regarding "removal," his conduct could have been construed as "removal" by deception, i.e., luring K.L. to his house and then to his bedroom; or, the "removal" could have been committed by force, i.e., by his grabbing K.L. from the doorway and moving her to his bed. Or, he could have committed kidnapping by detaining her when he grabbed her and then placed his body weight over her while she lay on his bed.

**{¶88}** It is entirely conceivable that, under appropriate factual scenarios, kidnapping occurs but the subsequent sexual conduct between the kidnapper and the kidnapped is not compelled by force. Here, however, by K.L.'s own testimony, the alleged "removal" (by deception or by force) or "detention" of the victim occurred in very close temporal proximity with the sexual conduct and was undisputedly committed only to facilitate the latter. As such, the alleged kidnapping was incidental to rape. Under such circumstances, a finding that the alleged offender by deception or force removed the

victim, or restrained her against her will, for sexual purposes, yet no forcible rape occurred, is simply incongruous.

{¶89} Essentially, the jury found that K.L., moments after being deceived into coming to Price's room or removed by force to his bed, and/or being restrained against her will, engaged in *consensual* sexual conduct with him. This defies common sense and logic. While an apparent rational incompatibility of a jury's verdicts on multiple counts of an indictment is not a ground for reversal, *State v. Adams*, 53 Ohio St.2d 223, 374 N.E.2d 137 (1978), in light of the strength of the contemporaneous evidence suggesting the consensual nature of the sexual conduct, the incongruity here undermines my confidence in the reliability of this outcome. If K.L.'s testimony does not prove rape beyond a reasonable doubt, it cannot prove kidnapping beyond a reasonable doubt, under the circumstances of this case.

{¶90} It is certainly within the province of the jury, as the trier of fact, to accept part of a witness's testimony and to reject the remainder. *State v. Swiger*, 5 Ohio St.2d 151, 156, 214 N.E.2d 417 (1966). Here, however, the jury seemed to simultaneously accept and reject the same testimony — finding the victim's testimony regarding the circumstances surrounding the sexual conduct incredible for the rape offense, but credible for the kidnapping offense.

{¶91} A jury may at times convict a defendant of an offense but acquit the defendant of a related offense as a result of compromise or leniency, and "the sanctity of the jury verdict should be preserved and could not be upset by speculation or inquiry into

such matters to resolve the inconsistency." (Citation omitted.) *Lovejoy,* 79 Ohio St.3d at 444, 683 N.E.2d 1112 (1997). However, given the lack of corroborating evidence in this case and the significant undermining of the alleged victim's testimony by the text messages, the incongruity of the verdicts highlights the likelihood that the jury, in assessing the evidence, lost its way in finding Price guilty of kidnapping while not guilty of rape, when the kidnapping offense would have no independent significance other than facilitating the rape.

{¶92} While we must accord the utmost respect to a jury verdict and tread prudently in reviewing it, "[w]e are not a rubber stamp convened merely to endorse the conclusions of the jury, but rather have a duty to reverse the jury verdict * * * if the evidence cannot support it." (Citations omitted.) *Price v. Charlotte*, 93 F.3d 1241, 1250 (4th Cir.1996). This court has not shied away from its duty to engage in an independent and rigorous review of the evidence in determining whether a jury verdict can and should stand. In *State v. Williams*, 8th Dist. Cuyahoga No. 95796, 2011-Ohio-5483, this court, after considering the credibility of the witnesses and weighing the evidence, found that the jury clearly lost its way in resolving conflicts in the evidence and its verdict resulted in a manifest miscarriage of justice.

{¶93} Similarly here, I am unable to conclude the manifest weight of the evidence supports a conviction of kidnapping. For this reason, I respectfully dissent.